O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANIE C., | Case No. 5:19-cv-1457-KES |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

**I.**

**PROCEDURAL BACKGROUND**

Plaintiff Janie C. ("Plaintiff") applied for Title II Social Security disability insurance benefits in January 2016, alleging a disability onset date of October 15, 2012. Administrative Record ("AR") 168-74. Plaintiff worked at a grocery store for years as a general merchandise clerk, with her last position being in the floral department. AR 40-41, 183. She left that job complaining of repetitive motion injuries to both wrists and eventually settled a workers' compensation claim. AR 42.

On June 5, 2018, the Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, testified, along with a

vocational expert ("VE").  AR 32-74.

On July 27, 2018, the ALJ issued an unfavorable decision.  AR 12-26.  The ALJ found that Plaintiff suffered from medically determinable severe impairments of "bilateral carpal tunnel syndrome, status post-release and revision; fibromyalgia versus myofascial pain syndrome versus chronic regional pain syndrome ("CRPS"); cervical spine degenerative disc disease; and lumbar spine degenerative disc disease."  AR 17.  Despite these impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work (which generally requires lifting 10 pounds frequently and 20 pound occasionally) with additional limitations on postural activities and only "occasional" fingering and handling.  AR 18.  Based on this RFC and the testimony of the VE, the ALJ found that Plaintiff could work as a school bus monitor or usher, both of which require light exertion per the Dictionary of Occupational Titles ("DOT").  AR 25-26.  The ALJ concluded that Plaintiff was not disabled.  AR 26.

## II.

## ISSUES PRESENTED

Issue One: Whether the ALJ erred in evaluating the opinions of Dr. Uppal. (Dkt. 18, Joint Stipulation ["JS"] at 4.)

Issue Two:  Whether the ALJ erred in evaluating the opinions of Dr. Kupfer. (Id.)

## III.

## RELEVANT LAW

District courts have jurisdiction to review the final decisions of the Commissioner and have the power to affirm, modify, or reverse the Commissioner's decisions, with or without remanding for further hearings.  42 U.S.C. § 405(g); see also id. § 1383(c)(3).

When asked to review the Commissioner's decision, the Court takes as conclusive any findings of the Commissioner which are free from legal error and

2

1  supported by "substantial evidence." Id. § 405(g).  Substantial evidence is "such

2  evidence as a reasonable mind might accept as adequate to support a conclusion,"

3  and it must be based on the record as a whole.  Richardson v. Perales, 402 U.S.

4  389, 401 (1971).  "'Substantial evidence' means more than a mere scintilla," id.,

5  but "less than a preponderance."  Desrosiers v. Secretary of Health & Human

6  Services, 846 F.2d 573, 576 (9th Cir. 1988) (citation omitted).  Even if the

7  Commissioner's findings are supported by substantial evidence, the decision

8  should be set aside if proper legal standards were not applied when weighing the

9  evidence.  Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978) (quoting Flake v.

10  Gardner, 399 F.2d 532, 540 (9th Cir. 1978)).

11       In reviewing the record, the Court must consider both the evidence that

12  supports and detracts from the Commissioner's conclusion.  Jones v. Heckler, 760

13  F.2d 993, 995 (9th Cir. 1985).  Part of this evidence includes medical opinions

14  from treating, examining, and consulting physicians.  See 20 C.F.R. § 404.1527(c);

15  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  "As a general rule, more

16  weight should be given to the opinion of a treating source than to the opinion of

17  doctors who do not treat the claimant."  Turner v. Comm'r of SSA, 613 F.3d 1217,

18  1222 (9th Cir. 2010) (citation omitted).  This rule, however, is not absolute.

19  "Where . . . a nontreating source's opinion contradicts that of the treating physician

20  but is not based on independent clinical findings, or rests on clinical findings also

21  considered by the treating physician, the opinion of the treating physician may be

22  rejected only if the ALJ gives specific, legitimate reasons for doing so that are

23  based on substantial evidence in the record."  Andrews v. Shalala, 53 F.3d 1035,

24  1041 (9th Cir. 1995) (citation omitted).

25       The Ninth Circuit applies a harmless error analysis to social security

26  appeals.  McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011).  ALJ errors in

27  social security cases are harmless if they are "inconsequential to the ultimate

28  nondisability determination," whereas "a reviewing court cannot consider [an]

3

1  error harmless unless it can confidently conclude that no reasonable ALJ, when

2  fully crediting the testimony, could have reached a different disability

3  determination." <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050, 1055-56 (9th

4  Cir. 2006).  The harmless error analysis applies in assessing the impact of an ALJ's

5  failure to discuss a medical opinion or give sufficient reasons for discounting it.

6  <u>Marsh v. Colvin</u>, 792 F.3d 1170, 1172 (9th Cir. 2015).

**IV.**

**DISCUSSION**

**A.** <u>**ISSUE ONE: Dr. Uppal.**</u>

**1.  Summary of Dr. Uppal's Opinions.**

On July 30, 2013, Dr. Uppal performed an initial qualified medical

evaluation in connection with Plaintiff's workers' compensation claim.  AR 317.

He recited the history of her wrist pain and surgeries starting in 2012 through her

failed attempts to return to work in February and May of 2013.  AR 319.  He noted

that Plaintiff's job duties involved chopping fruit, cutting flower stems, arranging

flowers, and lifting potted plants weighing between 5 and 10 pounds.  AR 320.  As

"work restrictions," he opined that she should do "no heavy lifting; no power

gripping; no repetitive flexion or extension of the right or left hand."  AR 321.

On September 14, 2014, Dr. Uppal performed a qualified medical re-

evaluation.  AR 310.  He noted that since the last evaluation in July 2013, Plaintiff

had undergone additional surgeries on her left and right wrists.  Those surgeries

brought temporary pain relief, but then her pain worsened.  AR 311.  He opined

that Plaintiff had increased impairment due to increased pain.  AR 313.  As new

work restrictions, he opined that she was precluded from lifting "greater than five

pounds" and from "power gripping."[1]  <u>Id.</u>

---

[1] Plaintiff testified that medical tests had established she could only lift 2
pounds, and she could not lift her 6-pound puppy.  AR 55-56.  She also testified
that she limped "really badly," dropped "everything," could only walk to the

4

### 2.  The ALJ's Evaluation of Dr. Uppal's Opinions.

The ALJ gave "partial weight" to Dr. Uppal's July 2013 opinions "due to the vagueness of certain terms."  AR 24.  The ALJ reasoned that although Dr. Uppal had not quantified his restriction against "heavy" lifting, presumably a restriction against heavy lifting was consistent with light work.  Id.  The ALJ also noted that the RFC's restriction to only "occasional" handling and fingering was consistent with a restriction against repetitive extension and flexion of the hands.  Id.  Finally, the ALJ admitted that while he was unsure what would constitute "power gripping," he believed that a preclusion against climbing ladders, ropes, or scaffolds would eliminate work situations that required power gripping.  Id.  The ALJ summarized Dr. Uppal's September 2014 re-evaluation but did not assign a specific weight to its opinions about work restrictions.  AR 20.

In determining Plaintiff's RFC for light work, the ALJ gave "significant" weight to the opinions of the state agency consultants, both of whom opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently.  AR 23, citing AR 81, 92-93.  The ALJ also gave "partial" weight to Dr. Kupfer, who opined in October 2014 that Plaintiff could return to work without a lifting restriction.  AR 24, citing AR 386.

### 3.  Analysis of Claimed Error.

First, Plaintiff argues that the ALJ erred in evaluating Dr. Uppal's July 2013 opinions, because Dr. Uppal "clarified" in his September 2014 report that his restriction against "heavy" lifting was a restriction against lifting more than 5

---

mailbox, spent 80% of her days in bed, and had "done everything" that doctors had recommended.  AR 52-54, 57.  The ALJ discounted her subjective symptom testimony, noting inconsistency with the objective medical evidence; that she had failed to follow certain treatment recommendations, including referrals to physical therapy and acupuncture (AR 22); that she did not use an assistive device to walk; and that physical examination findings often showed a normal gait and no motor loss in the lower extremities (AR 23).  Plaintiff does not challenge these findings.

pounds. (JS at 5.) The record does not support this argument. Dr. Uppal's September 2014 report expressly says that Plaintiff was more impaired than she was in 2013, because her pain worsened after two more hand surgeries in early 2014. AR 311, 313. Moreover, "heavy" lifting at the very least means lifting items that most people consider heavy, and most people do not consider 5-pound items heavy. Dr. Uppal, therefore, was assessing new restrictions in 2014, not clarifying the restrictions against "heavy lifting" he assessed in 2013.

Second, Plaintiff argues that the ALJ erred by failing to give reasons for rejecting Dr. Uppal's 2014 opinion that Plaintiff could not lift more than 5 pounds. (JS at 6.) Defendant argues that any error is harmless, because the VE's testimony provides substantial evidence to support a finding that working as a school bus monitor does not requiring lifting more than 5 pounds. (Id. at 10-11.)

The VE testified that a hypothetical person with Plaintiff's RFC could not do Plaintiff's past work, because that work required more than occasional handling and fingering. AR 64. The VE then testified that a person limited to occasional handling could work as an usher (DOT 344.677-014) or school bus monitor (DOT 372.667-042). Id. The ALJ asked if the handling and fingering required for those jobs was truly up to 1/3 of the workday or less. AR 65. The VE testified that it was "occasional" for ushers (meaning up to 1/3 of the workday)[2] but "none" for school bus monitors. Id.

Plaintiff's counsel asked the VE if someone could work as a school bus monitor and not "do anything with their hands in the entire job." AR 66. The VE explained that the job duties involved, "watching to make sure that no one kills anybody ….. You're a companion of sorts. … [S]o it doesn't require much hand use. No, it doesn't. You don't have to like write anything down, or hold anything …." Id. The VE further testified that school bus monitors are not normally

---

[2] See Social Security Ruling 83-10, 1983 WL 31251.

required to place children in seats or help them with their seatbelts.  Id.  Finally,
the VE testified that her testimony was consistent with the DOT, except for her
testimony about the effect of excessive absenteeism which was based on
experience.  AR 72.

Per the DOT, the job duties of a school bus monitor are to oversee loading of
the bus, ride the bus to prevent altercations between students and damage to the
bus, and participate in safety drills.  The DOT rates the job's handling and
fingering requirements as "not present."  The DOT classifies the job as "light"
work but notes that a job is considered "light" even if its lifting requirements are
"negligible" if it requires a significant degree of walking or standing.  DOT
372.667-042.

Respondent argues that since the job of school bus monitor does not require
handling or fingering, it does not require picking things up, which means it does
not require lifting, let alone lifting more than 5 pounds.  (JS at 10-11.)  Plaintiff
counters that the VE testified that the job does not require "much" hand use, which
means it requires some hand use, and that hand use might include lifting items that
weigh 5 pounds or more.  (Id. at 12.)

The duties of a school bus monitor listed in the DOT do not include lifting
anything, and the DOT rated the job's handling and fingering requirements as "not
present."  It is hard to imagine how a person could engage in lifting without
handling or fingering.  The DOT's description, along with the VE's testimony,
provides substantial evidence to support the conclusion that this job is rated "light"
because it requires walking and standing to supervise the loading and unloading of
school buses – not because it requires lifting items that weigh more than 5 pounds.
Thus, even if the ALJ had considered and credited Dr. Uppal's restriction against
lifting more than 5 pounds, substantial evidence (i.e., the VE's testimony and the
DOT) would still support the ALJ's finding that Plaintiff could work as a school
bus monitor.  This makes any error by the ALJ in failing to evaluate Dr. Uppal's

1   2014 opinions harmless.[3]

2   **B. <u>ISSUE TWO: Dr. Kupfer.</u>**

3   **1. Summary of Dr. Kupfer's Opinions.**

4   Dr. Kupfer, a surgeon, saw Plaintiff in December 2013.  AR 325.  He

5   recommended further surgery, because she had achieved "substantial symptom

6   relief though of short duration" with steroid injections to the wrist, suggesting to

7   him a pathology that could be surgically corrected.  AR 328.  He recommended

8   surgery on her left wrist first, followed by the right only if the left-side procedure

9   was successful.  <u>Id.</u>  Prior to either of those surgeries, he opined that Plaintiff could

10  return to work in the floral department, but only if she could avoid "lifting or

11  carrying exceeding 10 pounds taking a 5 minute break for stretching exercises each

12  hour."  AR 329.  Since Dr. Kupfer only treated Plaintiff for hand and wrist pain, he

13  was presumably referring to stretching exercises for her hands and wrists.

14  On January 10, 2014 (still pre-surgery), he assessed the same work

15  restrictions.  AR 331-32.  Plaintiff had left-wrist surgery on January 15, 2014.  AR

16  337.  After surgery, Dr. Kupfer opined that she was "temporarily totally disabled"

17  as she recovered from the surgery.  AR 335.  He offered this same opinion through

18  June 2014 when Plaintiff had right-wrist surgery.  AR 335, 341, 351-52, 368.

19  After that surgery, he again assessed her as "temporarily totally disabled" during

20  the recovery period.  AR 361, 375, 381.  In October 2014, he cleared Plaintiff to

21

22  ───────────────

23  [3] Plaintiff argues that the VE did not testify what percentage of school bus
    monitors are not required to engage in fingering and handling, and that such a

24  consideration might erode the number of jobs available nationally.  (JS at 12.)  The
    import of the VE's testimony was that the job as generally performed does not

25  require fingering or handling (and therefore lifting), such that no erosion need be
    considered.  The VE testified that 45,000 school bus monitor jobs are available

26  nationally (AR 45), a number that qualifies as "significant."  <u>See</u> <u>Gutierrez v.</u>

27  <u>Colvin</u>, 740 F.3d 519, 527-29 (9th Cir. 2014) (finding 25,000 jobs nationally is a
    significant number).

28

1  return to work in the florist department with only restrictions against "fine finger
2  activities involving dexterity" and "forceful strength activities" such as pulling or
3  twisting with both hands.  AR 386.

4  **2.  The ALJ's Evaluation of Dr. Kupfer's Opinions.**

5  The ALJ summarized Plaintiff's 2014 surgeries.  AR 20.  The ALJ gave
6  "partial" weight to the work restrictions Dr. Kupfer assessed in October 2014.  AR
7  24.  The ALJ did not discuss the work restrictions Dr. Kupfer assessed in
8  December 2013 and January 2014, i.e., to avoid lifting more than 10 pounds and
9  take a 5-minute stretch break every hour.  AR 329.

10  **3.  Analysis of Claimed Error.**

11  First, Plaintiff contends that the ALJ erred by not discussing and giving
12  reasons for rejecting Dr. Kupfer's December 2013 and January 2014 work
13  restrictions.  (JS at 13.)  Defendant counters that the ALJ did not need to discuss
14  those restrictions since they were only in place before Plaintiff's corrective
15  surgeries in January and June 2014.  (Id. at 16.)  Plaintiff replies that since this
16  reason was not offered by the ALJ, the Court may not consider it.  (Id. at 17.)

17  The ALJ's failure to specifically discuss the work restrictions assessed by
18  Dr. Kupfer over a 40-day period (i.e., from December 6, 2013 [AR 329] until
19  Plaintiff's surgery on January 15, 2014 [AR 337]) was harmless error.  The Court's
20  analysis with respect to the ALJ's failure to consider Dr. Uppal's opinion that
21  Plaintiff could not lift more than 5 pounds applies equally to the ALJ's failure to
22  consider Dr. Kupfer's opinion that Plaintiff could not lift more than 10 pounds.

23  While the ALJ's hypothetical question to the VE did not include an
24  opportunity to take hand-stretching breaks every hour, substantial evidence
25  supports a finding that Plaintiff could do so while working as a school bus monitor.
26  Per the DOT and the VE's testimony, the job duties include riding the bus.  A
27  school bus monitor can do hand and wrist stretching exercises while riding the bus.
28  It is clear from the record, therefore, that the identified error was harmless.

# IV.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner.

DATED:  May 26, 2020

_____
KAREN E. SCOTT
United States Magistrate Judge

10